Chief Judge, may it please the Court, my name is Dan Goldberg and I represent Raynald King. Because this is a consolidated appeal, I'd like to give an overview of where the parties intend to proceed in this oral argument. I'm going to take the first ten minutes and then cede the rest of the time to Justin Johnson. I believe he intends to attempt to reserve two minutes for rebuttal. Turning first to issue three as denominated by the government, the District Court erred in refusing to give Mr. King's duress instruction because the juries are routinely instructed on the issue of duress and ultimately it's a factual determination to make. Here Mr. King is currently serving multiple life sentences after jury trial where the jury didn't get to hear his one and only defense. What was his evidence of duress? I think it's a great question, Your Honor. The evidence was that he told the police when he was arrested that it was either that or take a bullet and that's a quote from Exhibit 560, the government's exhibit of his statement to police. So he told the police that this was that he was placed under duress, that he was picked up by Mr. Ross and Mr. Ross had a gun and that wasn't his first story. We can see that his story morphed over time but it's a story that he told the police and it's one I think that the jury should have been instructed on because I think even on that base level of offense he was entitled. Did he place himself in the situation though? I mean there's undisputed sort of evidence that there are communications between him and his ultimate so-called abductor. I think the evidence was equivocal. Again I point you to Exhibit 559, government's exhibit on page 41 of his confession where he says you know Mr. Ross pulled up, he had a gun, he told me to get in, he told me to drive and that connects to his overall duress theory. So I think there is evidence there. Now I think the government wants to impugn the evidence and discredit the evidence but I do think that's ultimately the jury's fault. Do we have to ignore the evidence of I think there were text messages or something between the two of them about kidnapping some people or Mexicans or something? I don't exactly remember but do we ignore that or because it's sort of undisputed and it's out there do we take that into account or did the district court take that into account in determining that he placed himself in this situation? I think you make a good point. I mean I don't think you ignore it but the problem is the district court's findings that's where I'm really hung up on. There's barely any findings as to why he denied the duress instruction. There's a four-prong test that the court doesn't go through it prong by prong explaining why or how the evidence cut against him. He just finds that his statement's incredible and doesn't really explain why. So I think that is a basis alone to remand. But wasn't it in part because as the theory of the case was it essentially he was the the initiator of this plot to kidnap and rob? That might have been the reason why the district court denied it but we don't know. I don't think the court made that statement on the record. So I think what the district and I don't think that's this court's role is to try to conjure up findings that the district court didn't make especially when we're dealing with something that's factual. And I think there's a lot of good case law out there that says that if there's an underlying evidentiary foundation and here there is, you have to give the instruction regardless of how weak that evidence is and that's the Cabot case from this court. The evidence from the government's perspective was very simple. Ross had the gun. Ross shot the victim and killed the victim. Ross did these things. And so when Mr. King tells the police, hey it was either that or take a bullet, I think that's something the jury needs to hear. I think it's particularly troubling where the government argues well the instructions as of were fine. They weren't. His trial counsel wasn't allowed to say in closing arguments the D word, the duress word, and say hey this is a total and complete defense. I think if trial counsel would have been able to do that, there's a reasonable probability of a different outcome. I'd like to turn to government's issue four now about kidnapping and whether that remains a crime of violence after maintenance. I think there's a lot of Davis, of course, invalidated the residual clause and the only way kidnapping can remain a crime of violence is it satisfies the force clause. And here the statutes are overdrawn. The government doesn't dispute that. You have in the bagels that it doesn't require any force. And so I don't think the government takes umbrage with the fact that generally kidnapping, federal kidnapping, is not a crime of violence. What the government instead arguing is that Mr. King's unique kidnapping crime is. In order to get to that conclusion though, I think the court or the government has to kind of mishmash a bunch of different elements from different statutes together, which is a creative argument. The problem is the Supreme Court and this court has repeatedly rejected that type of analysis in the categorical analysis. And we know what this court should look at because 924C3A is unambiguous in its statutory. That statute says the term crime of violence means an offense that is a felony and has an element of the use of attempted or threatened use of physical force. So what's an offense? Kidnapping, right? It's 1201. What are the elements of kidnapping? Well, they're unambiguous. So we can't go to other portions of other statutes to try to satisfy that. And I think we have circuit court case law that supports that analysis from the Fourth Circuit. It says you can't jump around and go to 924K. And I think it's the government that really doesn't have any support for its unprecedented. Does it matter that it's kidnapping resulting in death? I think that's, it's another argument they make as far as that 1201, that there was a finding by the jury that it resulted in death. But I don't think that ultimately gets them a horse clause finding either because the specific cause of death is immature. And how do we know that? I think based on this court's case law, you have the Montgomery case and the Barraza case. It says the term results is interpreted broadly. And the government makes an argument that there should be a but-for causation and incites to bridge. And I just don't think that circuit court, circuit courts have interpreted the statute that way in kidnapping. So you think we do consider the death and you prevail only if we believe that the hypothetical scenarios about dying of natural causes are overbroad. We do consider it though. You think 924J is a separate crime? I concede that it enhances the punishment. So that's something that they had to prove. But, you know, if Congress wanted to word that statute that the death of any person results by force, it could have done that. But it says the defendant has to cause the death through the use of a firearm. In the statute? Yeah. How does that fit with the natural causes theory? I don't, in the actual statute, I think it just causes the death. Well, I'm reading 924J. Is that the statute you're referring to? No. All right. What statute are you referring to? I'm referring to 1201. All right. And that's my point. So we can only look at 1201, okay? And you look at Instruction 30, the way that they were actually instructed, it just says that Jamie Patton's death resulted from the kidnap. There's nothing to do with the gun. And there is no element in 1201 that requires the use of a gun. So the government's just wrong about that. And so when it goes to 924J, that's just unprecedented to go there and that analysis, because the only thing that's relevant under the statute is the kidnapping elements. And the death from a kidnapping, well, again, it goes back to those hypotheticals. It could be done by natural death. It could be negligent driving of a vehicle, which, of course, would not satisfy the Force Clause under the Supreme Court's holding in Leo Cal. So for all these reasons, I think that... So I want to circle back. So you say we can consider 1201, which is a separate statute, but not 924J. Give me a reasoning for that again. Yes. So the statute, 924C3A, it says the term crime of violence means an offense, okay? So the offense is kidnapping. And if you go back and you read Davis, the Supreme Court does, I think, a really good job of parsing the language of what is an offense. And that's kidnapping. It can't be other elements of other statutes. And I think the... Even if they apply in this case? Even if they apply this case. And that's in Ray Irby from the Fourth Circuit. I think that's on point, that that is not a part of the categorical analysis, mashing together different statutes. Do we have case law on that point, or would we have to rely on Fourth Circuit case law to reach that? I didn't find any case law on point. Okay. Thank you. Thank you, Mr. Goldberger. Mr. Johnston? Good morning, Your Honors. Justin Johnston. I represent Howard Ross in this case, and I am going to focus on Mr. Ross's argument set forth in point one of his brief regarding the sufficiency of the evidence. The standard of review, as the Court well knows, is de novo, viewing the evidence in a light most favorable to the government. And the Court will overturn if no reasonable jury could have found defendant guilty beyond a reasonable doubt. And specifically, we are focusing in this case, in the first instance, on those counts that are predicated on kidnapping, and those are counts one and two of the indictment. The government must have shown the jury that Mr. Ross either agreed or participated in voluntarily and intentionally transporting the victim, and that the transportation was in interstate commerce. And it was indicted that way in this case. That's how it was charged in the indictment, was transporting between state lines as to the kidnapping charge. The evidence was not sufficient to show that, Your Honors, that Mr. Ross either participated or conspired to. Wasn't there proof that there was a transfer between states, that there was travel across state lines? So there was some proof that there was travel across state lines, and that was specifically, first, there was an ATM transaction receipt, 6.05 a.m. from the Wells Fargo in Leawood. And if the Court inspects the documentary and video evidence relating to that, what you end up seeing is that because of a failed transaction was the testimony that it didn't record who was at the ATM. What you see is basically nothing. What you see in that video is in the background at some point, there's a dark colored vehicle that many occupants are in. Well, you can't even identify the vehicle to specifically be that of Mr. Jamie Patton. So that's the first piece of evidence. So Mr. Ross is not depicted in that video. The second piece of evidence... Was the co-defendant depicted? The co-defendant was not depicted in that video, Your Honor. And so I've actually provided as part of the record in this case, in addition to the appendix of trial exhibits, on a flash drive, that video should the Court desire to view it in connection with this case. The second piece of evidence that actually would tend to show that state lines were crossed, the only one that I can gather was from first-person evidence, would be the statement of the co-defendant, Mr. Raynaud King. Mr. Raynaud King's statement at one point, what was shown to the jury because of Bruton issues, he said that they went to the someone else was involved in being at the Wells Fargo. However, it's well established that the jury could not have considered that statement of Mr. Raynaud King in connection with deciding whether Mr. Ross, in fact, agreed to cross state lines or himself participated in the... Now these were charged, I think one of them was charged as a conspiracy count and one of them was charged as an accomplice liability, or at least that was an alternative the jury was presented with. And so I guess my question, this is what I'm really struggling with, is if there's enough to show an agreement to kidnap, which probably satisfies both aiding and abetting and conspiracy, do they have to agree to cross state lines? In other words, is there enough for agreement or do you only have to agree to the kidnapping itself? No, I think you have to agree, you have to show agreement as to the general of the underlying offense, your honor, and you have to show an if you assume that Mr. Raynaud... What's your authority for that? That you have to show agreement in every element of the charged offense. Well, your honor, I don't have a case as I stand here before you, but there's essentially the gravamen of conspiracy law is that you have to show an agreement to commit the underlying offense. And I can submit additional letter briefing or something of that nature, but that I think is essentially black letter lawyer. If you don't, suppose you don't, and again, this is what I'm struggling with, then do you lose? Because if there's enough evidence to agree to the kidnapping, and it so happens that not your client, but King ended up crossing state lines based on his own testimony, that would seem to be sufficient evidence. I don't think so, your honor. And the reason is that first, I don't think that there was sufficient evidence of agreement. I don't think there was any evidence of agreement. What about the text messages? There were... Which text message, judge? Is it the initial text message that said, what's up, let's rob these Mexicans? That text message, judge, had nothing to do with this particular robbery. I believe the record shows that it would... First, it was a day, at least a robbery in this case. Secondly, there was no evidence that any Mexicans were robbed or anything of that nature. And so, it's my argument that that, we make it a separate point in the brief, that it shouldn't have been admitted in the first place because it's not part and parcel of a race geste with this offense. But it came in. It came in. The jury had that information to decide whether they were plotting a robbery of someone, whether it'd be Mexicans or a person of opportunity. But not this robbery, your honor. And this is the robbery that they were charged with, not with the robbery of someone else. And so, I don't think that is sufficient to show that there was a conspiracy to commit a robbery of the victim in this case, which I... That's the charge. I don't think plotting some other robbery is sufficient to show that there was an agreement for a conspiracy to commit this robbery. It's certainly not sufficient for purposes of the kidnapping and other charges in this case. But secondly, Judge Strauss, is that the evidence of any other evidence that was presented does not show that there was an agreement to cross the state line. And I do think that that's an essential element in this case. So, as far as some agreement in place to commit the crime of kidnapping, I don't think there's evidence of that. I think it's been shown. One other, by the way, way that there was an attempt to prove a crossing of state lines was this forensic evidence regarding... I think it's commonly referred to as cast testimony, which is the cell phone testimony based on historic cell phone data. We walked through that in the brief. But basically, what that showed was the victim, Jamie Patton's phone, was present at the ATM or in the vicinity of the Wells Fargo ATM at around 6.05 a.m. But there's no other evidence concerning Mr. Ross's phone, Mr. Raynell King's phone, and so that would not show that state lines were crossed by Mr. Ross. There's also no evidence in the cast materials to show that Mr. Ross was... the phone was present at the time of the alleged homicide. There's no evidence whatsoever to show that, as far as the cast evidence is concerned, that that occurred. At this point, Your Honors, I think I need to reserve my last two minutes for rebuttal unless there are further questions on this sufficiency issue. Thank you, Judge. Mr. Casey. Thank you, Your Honor. May it please the Court, I'm Brian Casey on behalf of the United States. Starting with where the Court left off on the issue of sufficiency of the evidence, the law is that the intent element is the intent to transport. The government does not have to prove intent to cross a state line. I looked at my brief to see if we had decided that proposition. I didn't see a case that said that, so I'll refer the Court to the jury instructions. Instruction number 30 explicitly states, and I'm quoting, the government does not have to prove that the defendant knew he was crossing a state line. So the intent element, and we can, you know, we can find additional authority if the Court would like, but the intent element simply goes to the intent to transport. And so here, I think that that is established. I mean, I don't think the government, as instructed to the jury, the government doesn't have to prove that there was agreement to cross a state line. There was an agreement to kidnap. You mentioned that there was no, no cite in your brief. Did you just, what you just read, was that a cite from a, or was that a quote from a case? That was a quote from the jury instructions. Thank you. That's instruction number 30, Your Honor. Sorry to interrupt you, but. No, no, no, absolutely. I probably went too fast. Okay. But I'm, you know, I'm fairly confident that's what the law is, and I remember checking these instructions, so I believe that that's, you know, correct. I'm comfortable enough representing that to the Court. Well, the trouble I'm having with it, and, you know, you also have to have agreement to the actus reus, usually, which is here, kidnapping. You have to have agreement to the intent, and this is more of an attendant circumstance, so I just don't know what the the black letter law is on agreement as to an attendant circumstance. And so, that's, I guess that's what I'm struggling with here. Yeah, and I don't think, again, even for principal liability, you don't have to prove that they knew it was a state line, just the intent to transport. That's fair. And in that regard, the evidence was more than sufficient. It was more than sufficient to show that they crossed the state line. It was more than sufficient to show that they conspired and aided and abetted each other in committing the crime. Well, how do you respond to the argument that in the absence of video with the car transaction, absence of any direct evidence that they were actually actually at that bank, what establishes that the state lines were crossed? Well, we do have direct evidence that they were at the bank because the card was used at that bank. And so, we have direct evidence that the card was there. And so, we know. Does that fit within the timing of the abduction? That it was in the timing of the abduction. So, what the evidence shows is that the victim, Mr. Patton, had returned to his house, had his phone connected to his home Wi-Fi at 555. And then at 605, about 10 minutes later, he's several blocks away across the state line at the ATM, and there's the failed transaction. And so, we know at that point, somewhere in there is when the abduction happened. And the video is really just corroborating. Video shows, because the way the video was captured, that particular bank does not capture or does not save video of failed transactions. It happened to be the case that right after the failed transaction involving the victim's card, another person had walked up to the bank, had done a completed transaction. And so, the video went back and saved, you know, I think it was two minutes before. And that got us the glimpse, and it was just a glimpse, of a dark SUV consistent with the victim's Jeep Patriot driving away. So, that corroborates that that was the car, and we know that that was the car. Were any of the defendants viewed on any of the videos or anything? Well, they weren't viewed on that video. But seven minutes later, at the next bank they go to is where you see them in the bank video, because the ATM captures both defendants in that video. Okay. It captures Raynald King very clearly, and with regard to Howard Ross, you see someone in the back seat. I think there's, you know, some debate in the briefs, but more than sufficient for the jury to conclude that that was, based on the color of the sweatshirt, the beard, general profile and appearance, that that was Howard Ross sitting in the back. So, we have, you know, seven minutes later, a few blocks away, about a seven minute drive away, photo of both defendants. So, we have not only that direct evidence of them in the car at the time of the transactions, you also have the evidence before of them conspiring to commit the crime, and then you have the evidence afterwards, where they admit the crime to Tanisha Sanders, and then Mr. Ross makes false exculpatory statements that the jury easily could have construed against him, as well as all the forensic evidence, including evidence, DNA evidence, that it put, you know, one in 60 likelihood he was sitting exactly where the surveillance video showed that he was sitting in the car. So, I think, you know, you put it all together, you have more than sufficient evidence that, for the jury to conclude that Mr. Ross was in that Jeep Patriot the entire time. There's no other questions about sufficiency. I will move to the issue of the duress instruction. I think what I asked the court to consider on the duress instruction is that this was not a case where he didn't get to put on his defense. Mr. King got to put on his defense. The evidence that he is talking about was evidence that the jury heard. And it's interesting, and this is something I think the court should consider in reading the cases. Every duress case I looked at, where it was post-trial, the defendant had put on affirmative evidence. Either the defendant had testified, or the defendant had put on witnesses. The evidence that we're talking about here was the defendant's statement, and the government put it on. And the government put it on both for the purpose of admissions, and for the purpose to argue false exculpatory statements. The defendant would not have been able to put on that statement. It would have been self-serving hearsay. It wouldn't have been inadmissible. Why does that matter, though, if it was introduced for a proper purpose by the government? Because what now the defendant is trying to do is take a statement that the government has introduced as false exculpatory statements, and ask this court to parse out little pieces of it, and say it's a highly varying statement. I tried to go through it. I came up with about 11 or 12 different variations. It's hard to say when he changes the story or not, but there's different points at which he changes his story. It's around a dozen times. The defendant is now asking this court to pick out the most best story for him, and say that was his story. But it simply wasn't. Isn't that the risk, though, that the government took on when they introduced evidence that sort of had an unintended consequence, which is it supported potentially a duress instruction if taken literally? It was introduced by the government as substantive evidence, not as impeachment evidence, obviously. I agree completely. Had it supported the instruction, maybe we'd be having a different conversation, Your Honor. But if you look at the statement, it is so inconsistent. At one point, he says, I am not a victim. It wasn't like that. It's only after the agents, or I believe it was detectives at the time, point out that this could be a federal crime, that you crossed the state line. This could go federal. And they say, and this was a willful kidnapping. Does he begin to say, well, it wasn't willful. And then we start to see a change in his attitude. He's asked repeatedly, well, what did that mean? Well, I just knew what it meant. It was time to go. And I had to get in with him. So he really isn't saying that he's threatened at that point. In that part of the story, he's consistently saying that Ross let him out of the car. Ross let him out at the state line ATM. He was then able to walk home. It's only later when he's confronted with evidence does he start to admit that no, he didn't walk home from state line because they were able to disprove that he was wrong about the order of the banks. And it sort of showed that he couldn't have walked where he walked and things like that. And so it's as he's being confronted, does the story start to change? And so what Mr. King is asking this court is to, he's both arguing that any evidence is enough. I get the instruction. So don't weigh the evidence court, but please weigh the evidence court and find for me that there's at least a consistent story in there, taking bits and pieces where you can find these elements applied. What's the legal standard? What's the legal standard that the judge is supposed to use in deciding whether the instruction is warranted? Whether a reasonable jury could find all four elements. And so the judge, I believe that there is an evidentiary way in here. And I believe that that is that the district court is asked to make that evidentiary way, whether a reasonable jury could find all four elements because these were very, very inconsistent statements. Some of which were flat out disproved by evidence that wasn't contested and had to be basically contrary to that evidence. So Mr. King's story is that there was absolutely no conversation between he and Ross prior to King getting into the SUV. Is it abuse of discretion or de novo? My understanding is it's de novo as to whether there was enough evidence for the instruction, but maybe I'm wrong about that. Your Honor, I looked at this pretty hard and I think it's a wonderful question because I think this court's cases are kind of everywhere. I think one case I found instructive and honestly it was a case cited by the defense is the Young case. And the Young case is, I found instructive because it tries to really lay out what, try to reconcile this court's law. And it says whether the instruction is appropriate is de novo. That's the legal question. Whether the facts supported the instruction is clear error. And whether, and the wording or the formulation of the instruction is abuse of discretion. And that's what the Young case says? That's what the Young case says. Why would it, why would there be a clear error standard if the findings would be made by a jury? The judge isn't making factual findings. Whether the facts that support the instruction. So the judge, the judge has to make, whether to give, in giving the instruction, the judge has to make certain factual determination. And I thought you said all the judge is supposed to do is decide whether a reasonable jury could believe that the defense is set. I think that finding the facts that a reasonable jury would believe. The real standard of review here is pretty difficult. And what's the evidence on reasonable legal alternative to violating the law? If, if there's sufficient evidence to satisfy the imminent threat prong. I don't think there's sufficient evidence to satisfy the imminent threat prong. I know you don't, but I'm saying assume that the court thought the jury is allowed to pick and choose like it, with any testimony, which to believe. And it could believe his claim that he made at one point that he was under a threat. What's the evidence on reasonable legal alternative? Is there any evidence that he had opportunities to withdraw or decline or report and didn't take advantage of them? He did. He had three at the state line at Wells Fargo. That was not a drive up ATM. In fact, you kind of park at the side of the building and this is all in the trial testimony park at the side of the building. You get out, you walk around at that point, he's out of the car. So yeah, he could leave at that point at the Mazuma, the second ATM. While you see the car park in front, there's several feet from the ATM in the car. He actually does get out of the car and walk up and there's nothing in the surveillance video showing where King is out of the car that Ross is holding a gun up in the window or anything like that. It's very clear and the court can look at the photos and the video, very clear that King could have left at that point as well. And then after the crime, but while I think the criminal activity is still being commenced while they're still trying to rob and steal from the victim, they go to a 7-Eleven and Mr. King leaves. At this point, they've gotten out of the Jeep Patriot into Mr. King's Pontiac Grand Prix. That car comes to the 7-Eleven, parks three different occasions and on three different occasions, Mr. King walks into the 7-Eleven and he tries to do transactions with the debit card. He even says in his statement and as the video shows, the debit card is right by the clerk. He could have easily said 9-1-1. He could have easily said that there is someone in the car. But this also goes back to the first point about whether he has been threatened. It has to be a well-grounded fear. If you read Mr. King's statement, his fear, he said, why didn't you walk away? And for a large part of his statement is, he got to walk away. And the police are asking, why didn't you turn this in? Why didn't you do something? And he's like, well, Mr. Ross would have, Mr. Ross knew where I lived. He knew where my family lived. And that is exactly the kind of statement that this court, I believe in the Diaz case, has said it's not a well-grounded fear. Just this general fear of, well, he knew where my family lived, does not absolve him of the duty to get away from the crime, to stop his criminal activity. And if he really had a fear of Mr. Ross, he could have easily called 9-1-1. If there's no further questions on this issue, I'd like to go to then the government's argument that kidnapping resulting in death remains a crime of violence after the Davis case. And I want to just be very clear on this issue. The crime, the predicate crime is kidnapping resulting in death. It has its own elements. It has its own punishment. In this case, that's the predicate crime that the court needs to look at. Mr. King and Mr. Ross in their briefing make a significant effort to say, well, kidnapping is not a force clause offense because it can be committed through means that do not require violent force, in particular, the statutory means of embegglement. And the government has conceded that. The government has conceded that kidnapping in categorically a crime of violence because it can be committed through embegglement. Well, isn't also his argument that death could result without it being by force? And that's the argument. So the government's position is kidnapping resulting in death is a different crime. And it does have an element of force that the resulting in death does create the element of force. And to get to Mr. King and Mr. Ross... Why does resulting in death have to implicate a force use? Because the death, and this is I'm quoting from this court's Montgomery case, the death has to result from acts required to complete the kidnapping. There has to be, now, whether it's but for or some other causal connection, there has to be a causal connection. It cannot simply be a temporal coincidence. Because if that were the case, somebody dies somewhere during every kidnapping. There has to be something that brings us to the facts of this particular kidnapping, that a death resulted from it. And that has to be, that connection is what creates the causal connection that means to have kidnapping resulting death, there had to be the use of force. Because death is a, under the Curtis Johnson case, that is, results in bodily injury. It is the use of force. What about 924J? Is the government relying on that, or does the government agree with opposing counsel that it can't be considered? Your Honor, I'm going to be completely honest. We added that argument to address this court's decision in fields. I believe one of the ways kidnapping resulting in death, I just, I need to confess, one of the ways kidnapping resulting in death could likely result in death would be reckless driving. And this court has tension between this FOD decision, you use a firearm, and the fields decision, you use a car. Both are reckless conduct. And so, if this court were to agree that kidnapping resulting in death does causally require the use of force, we've added the additional argument about 924J to address the fields decision. So you think it does apply, though? I mean, that we should first go, we should, in your view, in the government's view, you first go and look at kidnapping resulting in death. And then if you don't get there with that, then you also look at J as well. I think you can, Your Honor, because that's an element that the government had to prove. And so, the particular crime here, the whole point of divisibility is, is there a way to commit the crime that's not violent? But in this case, the elements that the government had to prove based on how they charge this crime, there was no way to commit this crime that was not violent. If there's no further questions, just very briefly, I think the government can rely on its brief with regard to Mr. Ross's jury instruction about eyewitness testimony, Mr. Ross's argument about the admission of 404B evidence, both defendants' arguments about the legality of consecutive sentences and Mr. King's argument about the reasonableness of the sentence. Did you have, on the 1201 issue, do you have helpful authority on the causation point that the death has to result from something the defendant does in the kidnapping? Has that come up? I mean, it seems like an obscure issue. There's very, very... These hypotheticals of people dying coincidentally... Yeah, and I think... Aren't going to come up very much in real life. I couldn't find a case that directly, you know, sort of discussed the, there was the kidnapping and then an acne safe falls out of the sky. There is one case that talks about lightning and says, well, that wouldn't, wouldn't get us there. And then in their reply briefs, the defendants cite a Melton case and say, well, here's an example where there was a kidnapping and he's driving really, really fast. And at least according to the defendant in that case's story, the victim died because she hopped out of a speeding car. But that wasn't a kidnapping resulting in death case. That was just a kidnapping case. And so it was never decided by the court. That might count anyway, right? Because why would she jump out if she hadn't been kidnapped? Well, I think, and I think that the restraint of her body in that case would be violent force. And I think what's important to the government's argument here is that recklessness is an available mens rea, because kidnapping requires the unlawful seizure. And at that point, anything that happens will be reckless conduct. You mean no negligence could satisfy the... No negligence could satisfy it. It's going to, and it's going to be reckless conduct because again, the unlawful nature of the kidnapping itself will make the conduct reckless. If there are no further questions, the United States asks this government to affirm both the predictions and the sentence. All right. Thank you, Mr. Johnston. Mr. Casey. I have limited time, but I want to start off with the duress issue just briefly. I think the review here is to no vote. I think there's on point case law from this court. The Diaz case has to do with duress. So I think that's the law that needs to be followed. As far as the government's spin on the evidence, I don't think that's how this court views it, isn't the light most favorable to the government. I think there is case law that we need to look at it fairly. And the notion that you could call 911 when someone's threatened to shoot you. I think that's a factual determination for a jury as to whether that's a reasonable thing to do. What about the 7-11 incident where Ross was in the car and King was in the 7-11, according to opposing counsel? My thought would be if I was in his position, I'd be afraid I'd get shot before the police got there. If I were to say, hey, clerks, call the police. And then all of a sudden an alarm goes on. Well, I don't have a gun. He's got a gun. Why does the alarm go on when the clerk calls 911? Well, I don't know. You pull alarm. I guess maybe it's a audible alarm, the 7-11 clerk. What if he just picks up the phone and called 911? That was the suggestion. The police come and he says, well, we're, you know, he comes after him. I mean, I think there's invariable things that could happen where Ross is thinking, well, what's the holdup? I'm coming in there. I'm going to figure out what's going on. And he's going to tell that it's not going well. Turning to kidnapping just quickly, I think the Montgomery case that the government points to, the term results, was interpreted broadly. And that's what the 8th Circuit said. And so we cite to a news article where during a kidnapping there was a car crash. And there is an element that you have to take the person across state lines. So the notion that you could get in a car crash I don't think is hypothetical or out there weird. I think it's very plausible. And I think the case law supports the notion that there doesn't have to be, there doesn't have to be a specific but-for causation like that's argued by the government. What's the car crash point? If the kidnapper is driving and gets in a car crash and the victim dies, then how does that show that it's not a qualifying offense? It's not a qualifying offense because no force has been used. Die? Negligently in a car crash. There's just an accidental mistake. Or someone else comes in and plows into the defendant's car. Well, the defendant is using force by transporting the person in the car, isn't he? I don't think so. And I think for a couple of reasons. One of them is that there's that line of case law fields that says that reckless use of force, vehicular force, does not crime cause. All right. You have anything better than fields? What? In Leo Cowell, the Supreme Court case. Yeah, I know if that's the drunk driving case. Right. And so that's negligent. And even though there's serious bodily injury. But it isn't negligent. The defendant isn't negligently transporting the person. The defendant is willfully driving the person somewhere. He's willfully doing it. But the car crash is an intervening event. He didn't intend the car to crash. And so there's no force being used in that sense. There's just negligence. And you have to have a mens rea as it pertains to the force. Even if there's serious bodily injury, Leo Cowell holds, that's not good enough. You have to use that force knowingly. And I think there's debate as to whether even recklessly would count. Thank you, Mr. Goldberg. Thank you. Thank you also, Mr. Johnston and counsel for the government, Mr. Casey. We appreciate the argument you provided to the court this morning. We'll take the case under advisement.